UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW YOUNG,<br><br>Defendant. | Case No. 4:21-cr-00098-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

On December 16, 2020, a magistrate judge signed a warrant authorizing police to search Defendant Andrew Young's home, including any phones or computers located therein. The police found 73 images of a 14-year-old girl on Mr. Young's phone. In 38 of the images, she was nude or masturbating. Mr. Young now moves to suppress this and any other evidence found on his cell phones and computers. *Def.'s Mot.,* Dkt. 19-1. He says the affidavit supporting the search warrant did not establish probable cause that evidence of sexual exploitation of a child would be found on his phone. Mr. Young adds that even if the police had probable cause, the search authorized was overbroad. Alternatively, Mr. Young claims he is entitled to a *Franks* hearing because the detective who swore out the affidavit intentionally or recklessly misled the magistrate by omitting facts and by

MEMORANDUM DECISION AND ORDER - 1

including other false and misleading facts. The Court will forego a hearing because all of the issues raised by Mr. Young can—and really must—be resolved through a review of the record in this case. For the reasons explained below, the Court will deny both the motion and the hearing request.

## BACKGROUND

On December 9, 2020 Kimberly Zwygart reported that her 14-year-old daughter, U.B., was the possible victim of a sex crime. *Def.'s Ex. C*, Dkt. 19-2. She told the responding officer that five days earlier, she had gone through her daughter's phone and discovered that U.B. had been exchanging Snapchat messages with a 35-year-old man, Andrew Young. Ms. Zwygart explained that Mr. Young's contact was assigned the display name "My Local Pedo" and he had sent messages discussing graphic BDSM[1] rules to U.B. *Id*. Ms. Zwygart also learned that Mr. Young had given U.B. marijuana and a pipe. *Id*.

Ms. Zwygart reported that Mr. Young had contacted her through Facebook. *Id*. She said that she had confronted him about talking to U.B. on Snapchat and he admitted they had corresponded but denied doing "anything inappropriate." *Id*.

Ms. Zwygart further recounted that she had asked U.B. about Mr. Young. *Id*. According to the officer's report, U.B. admitted to her mother that she and Young

---

[1] Bondage and Discipline (BD), Dominance and Submission (DS), Sadism and Masochism (SM)

**MEMORANDUM DECISION AND ORDER - 2**

"had been sending pictures back and forth but did not specifically say they were naked or inappropriate pictures." *Id*. Although Ms. Zwygart did find one inappropriate picture on her daughter's phone, U.B. said that "she didn't know, or couldn't remember" whether "she had sent that specific picture" to Mr. Young. *Id*.

At some point during this interview, Detective Korey Payne, a member of the Internet Crimes Against Children (ICAC) task force arrived. Ms. Zwygart reported the same information to him. *Def.'s Ex. B* at 4, Dkt. 19-2.

On December 15, 2020, Detective Payne interviewed U.B. and Ms. Zwygart. *Def.'s Ex. C*, Dkt. 19-2. At the start of the interview, U.B. gave Detective Payne a note, describing her relationship with Mr. Young:

> It all started in the beginning of the year he added me on Snap we started talking I told him I was 14, he said he was in his 30's. We mainly "role played" I was just messing around thought it was funny he on added me. I didn't care then a couple of months ago I think he added me back after a bit of talking I started to trust and like him I would do anything not to loose him so even if I was uncomfortable I didn't care he wanted to have kids and live together so thats what I wanted. I let him in I trusted him like an idiot he wanted to meet up a lot I alwase made up an excus. Xuz I was scared of getting in trouble he played me like a fool I trusted him nd he used me he made me feel safe and happy but it was all a lie. (p.s. Sorry about all that). He talked about alot that made me uncomfortable but i just went with it and when he asleep how I realy felt he would be like "remember kitten I like it". So I would change my anseur even if i did tell him how I felt about it he would still talk about it once we had talked for a while I starded sending him pictures and he told me I was pretty and stuff like that so I didn't mind sending him stuff. (sic)

*Def.'s Ex. B* at 4, Dkt. 19-2. During the interview, U.B. said that she had sent Mr.

**MEMORANDUM DECISION AND ORDER - 3**

Young pictures and videos in which she was nude or masturbating. *Def.'s Ex. D* at 8, 18, Dkt. 19-2. She also said that Mr. Young had sent images of his penis and other pornography. *Id.* at 9, 20. U.B. reported that they communicated exclusively through Snapchat because the pictures automatically self-delete. *Id.* U.B. did not think she had saved any of the pictures. *Id.* When Detective Payne asked U.B. why she had named Mr. Young's contact "My Local Pedo," U.B. said that she and her friend thought it was "funny to, like, mess with old guys." *Id.* at 11. She reported that Mr. Young "constantly" asked to meet in person, but they never did because she was scared. *Id.* U.B. confirmed that Mr. Young had brought her marijuana. *Id.* at 13.

The next day, December 16, 2020, Detective Payne applied for a warrant to search Mr. Young's residence, vehicles, computers, and cell phones. *Gov's Ex. D* at 2-6, Dkt. 25-4. Detective Payne attested that he sought the warrant as part of an investigation concerned "alleged violations Idaho Code § 18-1507, regarding the Sexual Exploitation of a Child." *Id*. at 8.

In the "probable cause" section of the affidavit, Detective Payne described his initial meeting with Ms. Zwygart and her allegations that Mr. Young was in a romantic relationship with U.B. and had brought U.B. marijuana. *Id*. at 14-15. Detective Payne explained that, according to Ms. Zwygart, U.B. admitted that she and Mr. Young had exchanged sexually explicit images through Snapchat. *Id*.

**MEMORANDUM DECISION AND ORDER - 4**

Detective Payne attested that he had seen U.B.'s Snapchat account, which revealed chats discussing BDSM and that Mr. Young's contact was assigned the name "My Local Pedo." *Id*. Finally, Detective Payne asserted that Ms. Zwygart "has begun the paperwork process for a civil protection order." *Id*.

Detective Payne also made several assertions about how Snapchat operates. According to the affidavit, Snapchat servers delete the content of a Snap "once all recipients have viewed it." *Id*. But, Detective Payne asserted, "in limited circumstances Snap content can be retrieved." *Id*. Snapchat retains metadata for 31 days—which includes the date, time, sender, and recipient of a snap, but not the content. *Id*. Snapchat also retains metadata that shows "if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared." *Id*.

Based on this information, Bingham County Magistrate Judge Michelle Mallard signed the warrant. *Id*. Officers executed the warrant a day later, on December 17, 2020. *Def.'s Ex. B*, Dkt. 19-2. Mr. Young now moves to suppress the evidence gathered during that search.

## DISCUSSION

### A.  Probable Cause

The Warrant Clause of the Fourth Amendment generally requires police to obtain a warrant from a neutral magistrate before searching private property. *See*

MEMORANDUM DECISION AND ORDER - 5

U.B.S. CONST. AMEND. IV. The amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, . . . ." *Id*. Probable cause is established when there is "a fair probability that contraband or evidence is located in a particular place. Whether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question. Neither certainty nor a preponderance of the evidence is required." *United States v. Kelley*, 482 F.3d 1047, 1050-51 (9th Cir. 2007) (internal quotation marks and citations omitted). In other words, probable cause "is not a high bar: It requires only the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.B.S. 320, 337 (2014) (internal quotation marks and citation omitted).

A reviewing court gives "great deference" to an issuing judge's finding that probable cause supports a warrant. *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011). "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.B.S. 238-39 (1983) (cleaned up) (internal citation omitted). As the Ninth Circuit has explained, "[n]ormally, we do not 'flyspeck' the affidavit supporting a search warrant through de novo review; rather, the magistrate judge's determination should be paid great deference." *Kelley*, 482 F.3d at 1050. Also, "[i]n borderline cases, preference will be accorded to warrants and to the decision

MEMORANDUM DECISION AND ORDER - 6

of the magistrate issuing it." *United States v. Martinez*, 588 F.2d 1227, 1234 (9th Cir. 1987).

In determining whether a search warrant was based upon probable cause, the district court's review is limited solely to the affidavit, as "all data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v. Gourde*, 440 F.3d 1065, 1067 (9th Cir. 2006) (citing *United States v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971)). Information "known to the affiant which is not presented to the issuing officer is irrelevant to a determination of probable cause." *Anderson*, 453 F.2d 174 at 175 (citation omitted).

In moving to suppress, Mr. Young primarily argues that the affidavit did not provide probable cause that his phone would contain sexually explicit photos sent through Snapchat. Mr. Young points out that the affidavit states that "Snaps are deleted from Snap Inc.'s serve[r]s once all recipients have viewed it." *Def.'s Mot.* at 8, Dkt. 19-1. According to the facts provided in the affidavit, Mr. Young contends, "any photos would have been automatically deleted by Snapchat when Young viewed them." *Id*.

The law does not support Mr. Young's implicit argument that the warrant needed to provide probable cause that photos of the U.B. were on his phone. Detective Payne attested that the investigation concerned potential violations

**MEMORANDUM DECISION AND ORDER - 7**

Idaho's "Sexual Exploitation of a Child" law. *Gov's Ex. D* at 8, Dkt. 25-4. That law prohibits not only (a) possessing "sexually exploitative material" but also (b) causing or inducing "a child to engage in . . . any explicit sexual conduct for the purpose of producing or making sexually exploitative material." Idaho Code § 18-1507 (a)-(b). The affidavit provided probable cause that Mr. Young's phone would contain evidence that a violation of subsection (b).

"[A] finding of probable cause" requires "a fair probability both that a crime has been committed and that evidence of its commission will be found in the location to be searched." *United States v. Tan Duc Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012). "An affidavit must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination" *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013)

The affidavit provided facts that supported the conclusion that Mr. Young had violated Idaho Code § 18-1507(b): namely that he was in a romantic relationship with a teenager, his contact in her phone was named "My Local Pedo," he sent messages to her discussing BDSM, and he had received sexually explicit images of her. *Gov's Ex. D* at 15, Dkt. 25-4. These facts provide a substantial basis—the standard of review the Court applies—for the magistrate to reasonably

**MEMORANDUM DECISION AND ORDER - 8**

infer that Mr. Young had caused or induced a minor to engage in explicit sexual conduct to make sexually exploitative material.

The affidavit also provided facts that supported the conclusion that evidence would still be on Mr. Young's phone. The affidavit references both Snaps (photo or video messages, which may include text) and chats (purely textual messages). Detective Payne said that Snaps automatically self-delete—with the qualifier that they are sometimes recoverable—but did not make same assertions about chats. *Id.* at 14-15. In fact, to the contrary, he stated that he had seen chats discussing BDSM, which implicitly confirmed that chats do not disappear once they are read or opened. *Id.* Once more, these facts provided a substantial basis for the Magistrate to reasonably infer that the phone would contain evidence that Mr. Young had caused or induced a minor to engage in explicit sexual conduct to make sexually exploitative material.

The magistrate therefore had a substantial basis for concluding that probable cause existed. Even if, as Mr. Young argues, there was not probable cause to conclude the images themselves would be on his phone, there was a substantial

**MEMORANDUM DECISION AND ORDER - 9**

basis to find probable cause that the phone would contain evidence that he had violated Idaho Code § 18-1507(b).[2]

## B. Overbreadth

Mr. Young next argues that the warrant was overbroad. But his argument on this point is circular and basically amounts to the same argument discussed above: namely, that the search warrant did not provide probable cause.[3] Without any basis to conclude that Mr. Young copied Snaps that contained sexually explicit images, he argues, "the search of Young's phone for images outside of those contained in Young's Snapchat account was 'overbroad' and therefore without probable cause." *Def.'s Mot.* at 10, Dkt. 19-1. In other words, he says that without probable cause, the warrant was overbroad.

The Court has already determined that probable cause to conduct the search existed. This is the first factor courts consider in analyzing the breadth of a

---

[2] The Court will not decide the narrow issue of whether probable cause existed as to the photographs.

[3] *See Def.'s Mot.* at 11, Dkt. 19-1 ("The Government here conducted a 'general, exploratory rummaging in [Young's] belongings' based, at best, on probable cause that he had been sent one or more Snaps containing sexually explicit images which – according to Detective Payne's assertions in the Affidavit of Probable Cause – would have been erased from the server when viewed by Young."); *Def.'s Reply.* at 6, Dkt. 30 ("The search warrant is overbroad because there is not 'a fair probability that contraband or evidence of a crime will be found' either in the Snapchat logs themselves or – at least prior to viewing these logs available only from Snapchat, Inc., to determine if the Defendant used his 'native screen capture function' to save them – in the Snapchat images that would automatically disappear after being opened.").

**MEMORANDUM DECISION AND ORDER - 10**

warrant. *See United States v. Flores*, 802 F.3d 1028, 1044 (9th Cir. 2015) (setting out the first inquiry as "whether probable cause existed to seize all items of a category described in the warrant"). The Court will briefly turn to the second and third factors: "whether the warrant set forth objective standards by which executing officers could differentiate items subject to seizure from those which were not" and "whether the government could have described the items more particularly in light of the information available." *Id.*

The warrant satisfies both of the remaining factors. The standard for searching Mr. Young's phone was clear. *See Gov's Ex. D* at 2-6, Dkt. 25-4. The warrant directed officers to seize, among other things, "visual depictions of child pornography," "passwords, data security devices and related documentation that may be used to receive, or possess obscene visual representations of the sexual abuse of children, and sexually explicit images of minors," and "[i]nformation or correspondence pertaining to the possession, receipt or distribution of child pornography." *Id*. In light of the information available—Mr. Young was in a romantic relationship with a teenager, and they exchanged sexually explicit images and messages through Snapchat—the government could not have offered more particularity.

Accordingly, Defendant Andrew Young's motion to suppress is denied.

C. *Franks* Hearing

MEMORANDUM DECISION AND ORDER - 11

Mr. Young's argument that the Court should hold a *Franks* hearing fares no better.

In *Franks v. Delaware*, 438 U.B.S. 154 (1978), the Supreme Court held that a search warrant is not valid if the police obtain it by deliberately or recklessly presenting false, material information to the issuing judge. The Fourth Amendment requires an evidentiary hearing on the veracity of a warrant affidavit, and ultimately on the constitutionality of the search, when a defendant requests such a hearing and "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and ... the allegedly false statement is necessary to the finding of probable cause." *Id*. at 155-56. *Franks* also applies to deliberately or recklessly deceptive omissions. *See, e.g.*, *Shell v. United States*, 448 F.3d 951, 958 (7th Cir. 2006).

It is difficult to make the "substantial preliminary showing" required under *Franks*. Allegations of negligent or innocent mistakes do not suffice, nor do conclusory allegations of deliberately or recklessly false information. "A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without

**MEMORANDUM DECISION AND ORDER - 12**

the allegedly false information." *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). That showing does not necessarily entitle the defendant to a favorable finding on the merits, but it entitles the defendant to a hearing.

At the hearing stage, the defendant will prevail if he can establish two things by a preponderance of the evidence: "first, that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and second, that the false or misleading statement or omission was material, i.e., necessary to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (cleaned up) (internal quotations and citation omitted). When a defendant makes a successful *Franks* challenge, "the search warrant must be voided and the fruits of the search excluded." *Id.*

In this case, Mr. Young argues that Detective Payne omitted the following information:

(1) His interview with U.B. on December 15, 2020.

(2) The forensic review of U.B.'s phone, including her Snapchat account, on December 15, 2020.

(3) Deputy Sagers's report that during the December 9, 2020 interview, Ms. Zwygart said that U.B. told her that she (U.B.) and Young "had been sending pictures back and forth but did not specifically say they were naked or inappropriate pictures."

**MEMORANDUM DECISION AND ORDER - 13**

*Def.'s Reply.* at 9-10, 11-14, Dkt. 30. He also argues that Detective Payne's statement that "the possibility of evidence being deleted or erased when Andrew is served a civil protection order this week" was false because Detective Payne knew by December 15 that a magistrate judge had denied the application for a civil protection order. *Id.* at 8. Mr. Young asserts that because only one week passed between the initial meeting with Ms. Zwygart and the affidavit, "the omissions must have been deliberate." *Id*. at 13.

The Court takes up the question of materiality first. Regardless of whether these facts actually amount to deliberate omissions, the question is whether Mr. Young has made a substantial showing that the facts are material to the probable cause analysis. That is, Mr. Young must make a substantial showing that probable cause would not have existed if the facts has been included in the affidavit. The Court will address each fact in turn.

First, Detective Payne's December 15 interview with U.B. does not attack the veracity of the information provided in the affidavit. If anything, the interview provided more facts to support the finding of probable cause. In the interview, U.B. not only confirmed that she had sent explicit images of herself to Mr. Young, she also said that Mr. Young gave her instructions, which she then followed when taking videos and pictures. *See Def.'s Ex. D* at 20-22, Dkt. 19-2 (confirming that Mr. Young asked U.B. to "use something to masturbate with . . . like a hairbrush or

**MEMORANDUM DECISION AND ORDER - 14**

something."). If included in the affidavit, this fact would likely have provided an even stronger basis for finding probable cause that the phone would contain evidence that Mr. Young had violated Idaho Code § 18-1507(b).

Mr. Young points specifically to U.B.'s statement that she and Mr. Young used Snapchat because Snaps automatically delete. *Id.* at 12. But this statement would not have affected the probable cause analysis because it does not offer any new information. In the submitted affidavit, Detective Payne discusses the fact that they corresponded through Snapchat and that Snaps delete.

Mr. Young also emphasizes what U.B. said about pedophilia. She told Detective Payne that she and her friend would talk about pedophiles sometimes because her friend "just thought it was funny to, like, mess with old guys." *Id.* at 14. She said that Mr. Young's contact was assigned the name "My Local Pedo," "because it was funny." *Id.* at 14. These statements would not have affected the probable cause determination either. U.B.'s interpretation of her relationship with Mr. Young would not alter the Court's analysis about whether their communication was a violation of Idaho Code § 18-1507(b) and whether evidence of that crime would be found on his phone.

Second, Mr. Young argues that adding the December 15 forensic examination of U.B.'s phone and Snapchat account to the affidavit would have impacted the probable cause analysis. The Court disagrees because, once again,

MEMORANDUM DECISION AND ORDER - 15

that fact does not challenge the truth of the facts in the affidavit. Mr. Young offers no evidence about what the search revealed. The mere fact that officers performed the analysis is neutral.

Next, Mr. Young points to the statement in Deputy Sagers's report that U.B. admitted to her mother that she and Young "had been sending pictures back and forth but did not specifically say they were naked or inappropriate pictures." *Def.'s Ex. C*, Dkt. 19-2. Mr. Young argues that this statement "conflicts" with Detective Payne's assertion that Ms. Zwygart "stated that U.B. admitted to her that sexually explicit images have been sent and received between her and Andrew Young." *Def.'s Reply.* at 12, Dkt. 30. The Court disagrees. One officer's statement of ambiguity does not contradict another officer's later clarification of the point. Furthermore, Detective Payne merely attested that Ms. Zwygart made the statement—not that it happened at the meeting with Deputy Sagers. Mr. Young fails to make substantial showing that Deputy Sagers's report challenged the affidavit's veracity or would have altered the magistrate's probable cause analysis.[4]

---

[4] It is also clear that in making this statement, Detective Payne was not intentionally making a false or misleading statement to the Magistrate Judge Mallard. By the time the affidavit was submitted to the magistrate on December 16, Detective Payne had interviewed U.B. and learned directly from her that she and Young had indeed been exchanging sexually explicit images. While that additional fact was not included in Detective Payne's affidavit and cannot be considered in determining whether there was probable cause to issue the warrant, it belies any suggestion that Detective Payne was intentionally or recklessly trying to mislead Judge Mallard.

**MEMORANDUM DECISION AND ORDER - 16**

Finally, removing Detective Payne's statement that Ms. Zwygart was seeking a civil protection order—or, for that matter, correcting it to indicate that a magistrate had denied the order—has no impact on the probable cause analysis because that statement was not necessary for a finding of probable cause. As discussed above, the affidavit's statements about Mr. Young's relationship and correspondence with U.B. were sufficient to establish probable cause.

Because all the facts that Mr. Young points to are immaterial to probable cause, Defendant Andrew Young's request for a *Franks* hearing is denied.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Suppress (Dkt. 19) is **DENIED**.
2. Defendant's Request for a *Franks* Hearing (Dkt. 19) is **DENIED**.
3. The hearing set for December 16, 2021 at 9:00 am is **VACATED**.

DATED: December 13, 2021

B. Lynn Winmill
U.S. District Court Judge