UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW YOUNG,<br><br>Defendant. | Case No. 4:21-cr-00098-BLW<br><br>**MEMORANDUM DECISION & ORDER** |

## INTRODUCTION

Before the Court are Defendant Andrew Young's motion to dismiss the indictment and motion in limine regarding jury instructions (Dkt. 42). For the reasons explained below, the Court will deny both motions.

## RELEVANT BACKGROUND[1]

Defendant Andrew Young is charged with coercion and enticement of a minor; sexual exploitation of a minor child; receipt of child pornography; and possession of child pornography. These charges primarily arise out of Mr. Young's Snapchat correspondence with U.B., a 14-year-old girl.

---

[1] The Court described the facts of this case in its order deny Mr. Young's motion to suppress (Dkt. 32). For the sake of brevity, the Court will not repeat those facts here.

**MEMORANDUM DECISION & ORDER - 1**

On December 15, 2020, law enforcement interviewed U.B. and made a forensic copy of her cell phone using Cellebrite software. *Def.'s Ex. C*, Dkt. 19-2. at 31 (Detective Payne telling U.B. that "we have a computer that runs and pulls everyone off of [your phone]."). The process of making the copy deleted the phone's contents. *Id.* at 31-3 (telling U.B. and her mother that the phone "reset itself on us . . . so it's back to the beginning . . . Nothing I could do to stop that. . . . [T]here's something about the software in that phone, that's done this."). Detective Payne gave the wiped phone back to U.B. *Id.*

The facts show three iterations of the phone's data. Initially, the raw data on U.B.'s phone were destroyed during the Cellebrite forensic copying process. *Id.* Next, the raw Cellebrite extraction data were lost by the government. *See Def. Br.*, Dkt. 42 at 9 ("The Defendant has sought production of the Cellebrite extraction data from the alleged victim's phone, but the Government claims to no longer have it."); *Govt Br.*, Dkt. 48 at 8 ("The Government expects testimony that the raw data backup was likely misplaced during a migration to a new server within the police department."). Now, the parties both possess the Cellebrite UFDR file, which they agree is a readable report of the phone's contents.

But a UFDR file contains "only what the preparing examiner chooses to include" from the raw extraction data. *Vilfer Decl.*, Dkt. 52-1. According to the government, its forensic expert "selected a full extraction using the Cellebrite data

extractor," meaning that the UFDR file is a "full forensic image of U.B.'s phone." *Govt Br.* Dkt 48 at 6. But Mr. Young's expert witness, Don Vilfer, opines that the digital evidence is "not a full extraction or the original extraction obtained by law enforcement." *Vilfer Decl.*, Dkt. 52-1.

Mr. Young argues that because the government no longer has the raw data from either U.B.'s phone or the Cellebrite extraction, the Court should dismiss the incitement against him or, in the alternative, provide jury instruction about the government's spoliation of exculpatory evidence. He also requests a jury instruction addressing the government's burden of proof regarding his knowledge of U.B.'s age.

## LEGAL STANDARDS

### A.    Motion to Dismiss the Indictment for Due Process Violation

A defendant may secure the dismissal of the indictment against him by showing that the government has violated his Fourteenth Amendment due process rights by failing to preserve evidence. *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013). "[T]he government violates the defendant's right to due process if the unavailable evidence possessed exculpatory value that was apparent before the evidence was destroyed, and is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015) (quoting *United States v.*

*Cooper*, 983 F.2d 928, 931 (1993)) (9th Cir. cleaned up). In addition, "the defendant must demonstrate that the government acted in bad faith in failing to preserve the potentially useful evidence." *Zaragoza-Moreira*, 780 F.3d at 977 (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

B.  **Jury Instructions and Motions in Limine**

There is no express authority for motions in limine in either the Federal Rules of Criminal Procedure or the Federal Rules of Evidence. Nevertheless, these motions are well recognized in practice and by case law. *See, e.g., Ohler v. United States*, 529 U.S. 753, 758 (2000). The key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984). A ruling on a motion in limine is essentially a preliminary ruling, which may be reconsidered in the context of trial. *Id.* at 41.

A district court "has broad discretion" in formulating appropriate jury instructions. *United States v. Harris*, 587 Fed. Appx. 411, 411 (9th Cir. 2014) (unpublished) (quoting *United States v. Hayes*, 794 F.2d 1348, 1351 (9th Cir.1986)). *See also Arizona v. Johnson*, 351 F.3d 988, 994 (9th Cir. 2003) (A trial judge is the "governor of the trial" and enjoys "wide discretion in the matter of charging the jury.").

## DISCUSSION

A.  **Due Process Violation**

Mr. Young has not shown that the government's failure to preserve the raw

data from either U.B.'s phone or the Cellebrite extraction amounts to a due process violation that warrants dismissing the indictment. The facts and circumstances of this case do not support a finding that the government destroyed potentially exculpatory evidence in bad faith.

As discussed previously, the government no longer possesses the raw Cellebrite extraction data or the raw data from U.B.'s phone. To support his motion, Mr. Young speculates about what that data might have contained. He argues that they *could* have included evidence that U.B. sent the explicit images unsolicited by Mr. Young, concealed or misrepresented her age to Mr. Young, and was engaged in a game to catch pedophiles. *Def. Br.*, Dkt. 42 at 13.

These statements are mere hypotheses about the raw data's contents. And the underlying reasoning is flawed at best. For instance, the idea "that the alleged victim concealed her age as part of the game she was playing with her friend to catch predators" is as logical as leaving out raw meat to catch a vegan. *Id.* Pretending to be an adult is not an effective way of "catching" pedophiles who target children. Mr. Young's other claims are equally unpersuasive and unsupported by the evidence.

Mr. Young's expert witness, Don Vilfer, does nothing to ground the conjecture in fact. Mr. Vilfer primarily discusses the absence of data he expected to see from the phone extraction based on the facts of this case. He explains that

"without the full original extraction we do not know if the [data] were present at the time of extraction by the government or if they were omitted during preparation of the UFDR report provided to the defense." *Vilfer Decl.*, Dkt. Dkt. 52-1. Furthermore, he notes that that the absence of data could be explained "by data having been deleted by the victim or her mother prior to extraction" or because law enforcement simply did not include the data in the UFDR report. *Id.* In other words, Mr. Vilfer says it is possible that the government omitted certain data in preparing the UFDR report, but that it is also possible the government never had such data to begin with. Again, all Mr. Young offers is a guess about the nature of the raw data.

     Mr. Young has thus failed to show that the raw Cellebrite extraction data are potentially useful or that they have a readily apparent exculpatory value. "Potentially useful evidence, as defined in *Youngblood*, is 'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *Zaragoza-Moreira*, 780 F.3d at 978 (quoting *Youngblood*, 288 U.S. at 58). Notably, the Supreme Court and Ninth Circuit cases applying this standard involved very specific evidence. *See, e.g., Youngblood*, 288 U.S. at 53 (semen on victim's underwear and T-shirt); *California v. Trombetta*, 467 U.S. 479 (1984) (breath samples of drunk drivers); *Zaragoza-Moreira*, 780 F.3d at 977 (Port of Entry video footage); *Sivilla*, 714 F.3d

at 1172 (Jeep Grand Cherokee).

In contrast, Mr. Young does not identify anything in the raw data that could have been subjected to tests, the results of which might have exonerated him. Instead, he offers only speculations about what the raw data may have contained, which, he argues, might have been exculpatory. This is not sufficient. *See United States v. Drake*, 543 F.3d 1080, 1090 (9th Cir. 2008) ("The exculpatory value of an item of evidence is not apparent when the evidence merely could have exculpated the defendant.") (internal citation and quotation omitted); *see also United States v. Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 3395146, at *6 (N.D. Cal. Aug. 4, 2021) (finding that the defendant had shown exculpatory value that was only "speculative in nature" where the evidence "would not provide a conclusive determination" of exculpatory value and "could just as likely contain incriminating evidence").

Mr. Young similarly fails to show that the government acted in bad faith. "The presence or absence of bad faith turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed, because without knowledge of the potential usefulness of the evidence, the evidence could not have been destroyed in bad faith." *Zaragoza-Moreira*, 780 F.3d at 977. Here, the exculpatory value and potential usefulness of the raw data is purely speculative. The Ninth Circuit has not found bad faith in situations

involving speculative exculpatory value. *United States v. Robertson*, 895 F.3d 1206, 1211 (9th Cir. 2018); *Sivilla*, 714 F.3d at 1172; *Drake*, 543 F.3d at 1090.

Because Mr. Young has failed to show that the government's failure to preserve the raw data from either U.B.'s phone or the Cellebrite extraction amounts to a due process violation, the Court will deny his motion.

### B.   Jury Instructions

Mr. Young additionally requests a remedial jury instruction to address the evidentiary issue of the missing raw data. He also asks for clarity about "whether the Court intents to instruct the jury in this case that the prosecution must prove as an element of its case that the Defendant knew that the alleged victim was a minor." *Def. Br.*, Dkt. 42, at 23.

As Mr. Young is aware, this Court is not likely to actually preside over his trial due to the Court's calendar. Rather than bind the hands of another Court, the motions are denied without prejudice.

The Court will nevertheless offer some brief observations to support its decision.

### 1.   Remedial Instruction Regarding Spoliation

In determining whether to give a remedial jury instruction, the Court must balance "the quality of the Government's conduct" against "the degree of prejudice to the accused." *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir. 1979).

The Government bears the burden of justifying its conduct, and the defendant bears the burden of demonstrating prejudice. *Id.*

In evaluating the Government's conduct, the Court looks to whether (1) the evidence was lost or destroyed while in the Government's custody; (2) the Government acted in disregard for the interests of the accused; (3) the Government was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions; (4) if the acts were deliberate, whether they were taken in good faith or with reasonable justification; and (5) whether Government attorneys prosecuting the case participated in the events leading to the loss or destruction of the evidence. *Sivilla*, 714 F.3d at 1173.

In analyzing prejudice, the Court considers the centrality and importance of the lost evidence to the case, the probative value and reliability of secondary or substitute evidence, the nature and probable weight of inferences and kinds of proof lost to the accused, and the probable effect on the jury from the absence of the evidence. *Robertson*, 895 F.3d at 1214.

Here, the raw data was lost while in government custody and it would seem likely that the loss of evidence by any law enforcement agency would normally be the result of negligence. On the other hand, there are no facts to suggest that the government acted in disregard for Mr. Young's interests; did not adhere to reasonable standards of data destruction; acted deliberately in erasing U.B.'s phone

**MEMORANDUM DECISION & ORDER - 9**

or losing the raw extraction data; or involved attorneys in the evidence handling process. Moreover, Mr. Young has merely hypothesized about the potential contents of the raw data, which is not a demonstration of the centrality and importance of the "lost evidence." In short, there will need to be further argument and evidence submitted to the trial judge before a decision can be made on a spoliation instruction.

### 2. Mens Rea Jury Instruction

In criminal cases, most trial courts in this circuit adopt the Ninth Circuit Model Jury Instructions without alteration. For a charge brought under 18 U.S.C. § 2422(b), the Court turns to instruction 20.29, which provides that the government must prove two elements beyond a reasonable doubt. First, that the defendant used a means of interstate commerce "to *knowingly* [persuade] [induce] [entice] [coerce] an individual to engage in [prostitution] [describe proposed sexual activity]." (emphasis added). And second, that either "the individual the defendant [persuaded] [induced] [enticed] [coerced] was *under the age of 18*" or that the *defendant believed that the individual* [he][she] attempted to [persuade] [induce] [entice] [coerce] *was under the age of 18*." (emphasis added).

From the Court's perspective, this jury instruction correctly represents the law and does not, as Mr. Young argues, "remove the knowingly scienter requirement from 18 U.S.C. § 2422(b)." Nevertheless, Mr. Young may renew this

**MEMORANDUM DECISION & ORDER - 10**

objection at the appropriate trial juncture—presumably during a jury instruction conference.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss the Indictment (Dkt. 42) is **DENIED.**

2. Defendant's Motions in Limine Regarding Jury Instructions (Dkt. 42) are **DENIED WITHOUT PREJUDICE**.

DATED: May 12, 2022

B. Lynn Winmill
U.S. District Court Judge