RICHARD A. HEARN (ISB No. 5574)
JOHN B. INGELSTROM (ISB No. 2659)
HEARN LAW, PLC
151 N. 3rd Ave., Ste. 100
P.O. Box 70
Pocatello, ID 83204
Telephone: (208) 904-0004
Facsimile: (208) 904-1816
E-mail: hearn@hearnlawyers.com
         jbi@hearnlawyers.com

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>ANDREW YOUNG,<br><br>        Defendant. | Case No.: 4:21-cr-00098-BLW<br><br>**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE** |

COMES NOW the defendant, Andrew Young, by and through his counsel of record, Richard A. Hearn, HEARN LAW, PLC, and respectfully requests the Court grant Defendant's Motion for Downward Departure and/or Variance based on the following grounds:

**INTRODUCTION**

Andrew Young ("*Mr. Young*") is a 35-year-old man born in Pocatello who was placed in foster care at the age of eight due to the incarceration of his father and the admission of his mother to an inpatient substance abuse treatment center. Mr. Young's mother died of a pill and alcohol overdose in 2004. Mr. Young remembers being in three different foster care homes. After his

father's release from prison, Mr. Young lived with his father and his father's girlfriend. His father died of cancer in 2013. His only full sibling, Damian Young, died of a pill overdose in 2011.[1]

At defense counsel's request, an Adverse Childhood Experiences (ACEs) survey was performed on Mr. Young and scored by Jessie Thompson-Kelley, United States Probation Officer.

> The defendant participated in an ACEs survey with defense counsel which resulted in a score of 6. According to ACEs research, male participants with an ACEs score of 4 or more, when compared with others who had an ACEs score of 0, were 11 percent more likely to become an alcoholic, 30 percent more likely to suffer from chronic depression, 15 percent more likely to have a serious problem working, 20 percent more likely to have serious financial problems, 5.6 percent more likely to have heart disease, and 4.1 percent more likely to have a stroke. Almost 13 percent of Americans have a score equal to or higher than 4, and his score of 6 indicates he is at increased risk of a shortened lifespan (https:stopabusecampaign.org).[2]

The ACEs scores are usually included in PSIs written in Eastern Idaho by Probation Officer Thompson-Kelley.[3]

> In 1995 and 1997, the Center for Disease Control and Kaiser conducted a study regarding the impact of Adverse Childhood Experiences (ACEs) during the first 18 years of life and their long-range impacts into adulthood. Researchers define ACEs as potential traumatic events which occur prior to age 18 and include violence, abuse, or growing up in a family with mental health or substance use disorders. ACEs can impact brain development, affect how the body responds to stress, and are linked to chronic health problems, mental illness, and substance use disorders in adulthood (Centers for Disease Control and Prevention-CDC, and https://acestoohigh.com). Subsequent ACEs research for the last 20 years in over 48 states and the District of Columbia validated the original studies with consistent results.[4]

Consistent with Mr. Young's ACEs score of six out of ten, Mr. Young had three alcohol related charges before he was twenty-one years of age and he was only twenty-four years old when

---

[1] Mr. Young has two half-siblings who he is not in contact with.
[2] Letter dated August 24, 2022, from Jessie Thompson-Kelley, United States Probation Officer describing Mr. Young's ACEs score ("*ACEs Letter*") attached as Exhibit A to the Affidavit of Counsel.
[3] Mr. Young's PSI was performed by Caitlyn O'Very, United States Probation Officer and did not include an ACEs score.
[4] ACEs Letter.

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 2

he had his first drug related charge. Mr. Young reported that he started using methamphetamine at nineteen. At twenty-one, Mr. Young married Rosio Magana who was only sixteen at the time. The marriage ended after approximately one year.

Mr. Young graduated from high school in 2008. He has only held sporadic jobs and believes he hasn't been able to maintain long-term employment due to his mental health. Mr. Young recalls being labeled as having "mild retardation" throughout his school years. He was always provided "helpers" in school.

Mr. Young has been diagnosed with both depression and anxiety. He has attempted suicide twice, once in 2018 and once in 2020. In 2020, Mr. Young was diagnosed with both borderline personality disorder (BPD and post-traumatic stress disorder (PTSD)).  Mr. Young self-admitted himself to Willow Sage Services for counseling services and medication in 2020. He has been prescribed Seroquel for his mental illness.

Mr. Young was found guilty of the crimes of (1) coercion and enticement of a minor in violation of *18 U.S.C. § 2422(b)*, (2) sexual exploitation of a minor in violation of *18 U.S.C. § 2251(a)* and (3) receipt of child pornography in violation of *18 U.S.C. § 2252A(a)(2)*. Despite the seriousness of the Mr. Young's crimes, Mr. Young (a) never met the victim, (b) never took any sexually explicit pictures of the victim, and (c) never distributed any of the sexually explicit pictures the victim took of herself and sent to him.

Despite the fact that Mr. Young never met or photographed the victim, the Sentencing Recommendations (Dkt. 111) and Final PSI (Dkt. 110) recommend a sentence of 360 months. Mr. Young timely objected to the four-point enhancement under *§2G2.1(b)(4)(A)*.[5] If the Court

---

[5] *§2G2.1(b)(4)(A)* ("If the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence").

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 3

sustains Mr. Young's objection to the enhancement, the recommended sentence of 262-327 months would still be well above the statutory minimums for Count 1 (120 months); Count 2 (180 months) and Count 3 (60 months). Moreover, for the reasons detailed below, an additional four-point downward *Booker* variance or departure would be *reasonable* in this case. If the objection is sustained and the downward variance granted, the sentencing range would be 168-210 months.

As this Court is well aware, *U.S. v. Booker,* decided in 2005, and its progeny were intended to make the Sentencing Guidelines advisory. The sentencing recommendation is but *one factor* among all the other *§ 3553(a)* factors to be considered by the Court at sentencing. But unfortunately, despite *Booker* and its progeny, many courts continue to sentence defendants to sentences anchored by the Guideline recommendations. Because the recommended sentence in the PSI for Mr. Young of 360 months or – if Mr. Young's *§2G2.1(b)(4)(A)* objection is sustained – of 262-327 months would not be as reasonable as a lower sentence of 168-210 months, counsel respectfully asks this Court to grant Mr. Young's motion for a downward departure and/or variance and thereby, in this case, make the Guidelines truly *advisory*.

Mr. Young respectfully also asks that he be credited for time served from February 29, 2021, when he was arrested.[6] Mr. Young has been in custody since his arrest and arraignment in State court for the same identical conduct that he was indicted for by a federal grand jury on April 14, 2021.

## STATEMENT OF LAW

As this Court is aware, the Sentencing Reform Act of 1984 created the United States Sentencing Commission which was charged with promulgating Guidelines ("*Guidelines*") subject

---

[6] As of the date of his scheduled sentencing, September 16, 2022, Mr. Young will have been incarcerated – since January 29, 2021 – a total of 596 days or *nineteen months and nineteen days* including the end date.

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 4

to statutory standards. The Guidelines promulgated by the Commission were both detailed and binding.

The U.S. Supreme Court in *Apprendi v. N.J.*, 530 U.S. 466, 490 (2000) held that "any fact (other than the fact of a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt."

In *U.S. v. Booker*, 543 U.S. 220, 245 (2005), the Court held that the best way to remedy the *Sixth Amendment* problem announced in *Apprendi* – sentencing a defendant to a sentence longer than the maximum allowable sentence for that defendant based upon the facts either (1) as admitted by the defendant or (2) as found beyond a reasonable doubt by the jury – was to make the Guidelines "*advisory*" only.

> For reasons explained in *Jones*, *Apprendi*, and *Ring*, the requirements of the *Sixth Amendment* were clear. The application of Washington's sentencing scheme violated the defendant's right to have the jury find the existence of "'any particular fact'" that the law makes essential to his punishment. 542 U.S., at 301, 159 L. Ed. 2d 403, 124 S. Ct. 2531. That right is implicated whenever a judge seeks to impose a sentence that is not solely based on "facts reflected in the jury verdict or admitted by the defendant." *Id.*, at 303, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (*emphasis deleted*). . . . . Our precedents, we explained, make clear "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Ibid.* (*emphasis in original*).[7]

Departures and variances are two ways a judge may sentence outside the Guideline range. *Before* Booker, the only basis for a sentence outside the Guideline range was where a judge "departed" from the Guideline range, but the Guidelines strictly limited the circumstances under which a judge could depart.

---

[7] *United States v. Booker*, 543 U.S. 220, 232 (2005) (emphasis in original)

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 5

*After* Booker, a judge may also "vary" by sentencing outside the Guideline range as long as the judge grounds the sentence in the statutory purposes of sentencing. The "purposes of sentencing" are set forth in *18 U.S.C. § 3553(a)* cited below. **Variances granted by a District Court based upon its consideration of the *3553(a)* factors are** *the key to making the Guidelines truly advisory*.

> 18 USCS § 3553
>
> (a) **Factors to be considered in imposing a sentence. The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—**
>
> (1)  **the nature and circumstances of the offense and the history and characteristics of the defendant**;
>
> (2)  **the need for the sentence imposed—**
>
> (A)  **to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**;
>
> (B)  **to afford adequate deterrence to criminal conduct**;
>
> (C)  **to protect the public from further crimes of the defendant**; and
>
> (D)  **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**;
>
> (3)  **the kinds of sentences available**;
>
> (4)  **the kinds of sentence and the sentencing range established for**—
>
> (A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i)  issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii)  that, except as provided in section 3742(g) [*18 USCS § 3742(g)*], are in effect on the date the defendant is sentenced; or
>
> (B)  in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress

(regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5)  **any pertinent policy statement**—

(A)  issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B)  that, except as provided in section 3742(g) [18 USCS § 3742(g)], is in effect on the date the defendant is sentenced.[;]

(6)  **the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**; and

(7)  **the need to provide restitution to any victims of the offense**.[8]

In *United States v. Carty*, the Ninth Circuit Court of Appeals provided practical direction to district courts in how to apply the holding of *Booker* and its progeny at sentencing.[9] **After counsel for the Government and Defendant have been given a chance to argue for the sentence they believe is appropriate**

- **The district court should then consider the *§ 3553(a)* factors to decide if they support the sentence suggested by the parties**, *i.e.*, it should consider the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence  and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims. *18 U.S.C. § 3553(a)(1)-(7)*; *Gall*, 128 S. Ct. at 596-97 n.6.[10]

- **The district court may not presume that the Guidelines range is reasonable**. *Rita*, 127 S. Ct. at 2465 (*citing Booker*, 543 U.S. at 259-60); *Gall*, 128 S. Ct. at 596-97. **Nor should the Guidelines factor be given more or less weight than any other. While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be**

---

[8] *18 USCS § 355(a)(1)-(7) (emphasis added)*.

[9] Recounting some of the holdings in *Carty* is not intended to suggest that this Court is unaware of them. Instead, these practical directions stemming from *Booker* are included here only to serve as the legal basis for defense counsel's argument for a variance at sentencing in this case.

[10] *United States v. Carty,* 520 F.3d 984, 991 (9th Cir. 2008) (*emphasis added*).

- **taken into account in arriving at an appropriate sentence.** *Kimbrough*, 128 S. Ct. at 570; Gall, 128 S. Ct. at 594, 596-97, 602.[11]

- **The district court must make an individualized determination based on the facts.** However, the district judge is not obliged to raise every possibly relevant issue *sua sponte*. *Gall*, 128 S. Ct. at 597, 599.[12]

- **If a district judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."** *Id.* at 597.[13]

- Once the sentence is selected, the district court must explain it sufficiently to permit meaningful appellate review. **A statement of reasons is required by statute, § 3553(c), and furthers the proper administration of justice.** *See Rita*, 127 S. Ct. at 2468 (stating that "[c]onfidence in a judge's use of reason underlies the public's trust in the judicial institution"). **An explanation communicates that the parties' arguments have been heard, and that a reasoned decision has been made.** It is most helpful for this to come from the bench, but adequate explanation in some cases may also be inferred from the PSR or the record as a whole.[14]

- **Appellate review is to determine whether the sentence is reasonable**; only a procedurally erroneous or substantively unreasonable sentence will be set aside. *See id.* at 2459 (*citing Booker*, 543 U.S. at 261-63); *Gall*, 128 S. Ct. at 594 (*emphasizing that "appellate review of sentencing decisions is limited to determining whether they are 'reasonable' "*).[15]

## MOTION FOR DOWNWARD DEPARTTURE AND/OR VARIANCE

A. **Considering All the *§ 3553(a)* Factors, a Sentence *Significantly Below* the 360 Months Recommended in the PSI or, if the Objection Is Sustained, *Below* 262-327 Months Would Be *Reasonable*.**

Counsel will analyze the circumstances of Mr. Young's case looking almost exclusively at the *§ 3553(a)* factors while ignoring, as much as possible, the rules, tables and categories found in

---

[11] *United States v. Carty,* 520 F.3d 984, 991-992 (9th Cir. 2008) (*emphasis added*).
[12] *United States v. Carty,* 520 F.3d 984, 992 (9th Cir. 2008) (*emphasis added*).
[13] *United States v. Carty,* 520 F.3d 984, 992 (9th Cir. 2008) (*emphasis added*).
[14] *United States v. Carty,* 520 F.3d 984, 992 (9th Cir. 2008) (*emphasis added*).
[15] *United States v. Carty,* 520 F.3d 984, 992 (9th Cir. 2008) (*emphasis added*).

the Guidelines. Other than his *§2G2.1(b)(4)(A)* objection, Mr. Young did not formally object to the calculations of the PSI writer that led to the recommendation of a sentence of 360 months for Mr. Young. But, because no presumption of reasonableness should attach to the 360 months or, if the objection is sustained, the 262-327 month recommendation, the Guideline recommendation should be afforded no more – or less – weight than any of the other *§ 3553(a)* factors.

1. **The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.**

This is the most important sentence in *§ 3553(a)*. It has been routinely ignored by some courts at sentencing. Counsel is confident it will not be ignored by the Court.

If this Court comes away from its deliberations with a range of sentences which it finds would be reasonable, this Court should (or must) impose the *shortest* sentence the Court finds reasonable. Such a sentence, and only such a sentence, could be said to be sufficient, but not greater than necessary. While following the dictates of the Guidelines at sentencing is now discretionary – *under § 3553(a)* – following the dictates of reason is definitely not discretionary.

2. **The need for the sentence imposed—**

   **(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

Just how serious is the offense here? No one should dispute the seriousness of these crimes. Mr. Young was found guilty to the crimes of (1) coercion and enticement of a minor in violation of *18 U.S.C. § 2422(b)*, (2) sexual exploitation of a minor in violation of *18 U.S.C. § 2251(a)* and (3) receipt of child pornography in violation of *18 U.S.C. § 2252A(a)(2)*. But Mr. Young's case is unusual. Mr. Young never (a) met the victim, (b) took any sexually explicit pictures of the victim, or (c) distributed any of the sexually explicit pictures the victim took of herself and sent to him.

This case is atypical in yet another way. Mr. Young, despite having other convictions, has never been convicted or even charged with a child pornography offense. At the time of his arrest,

Mr. Young had no child pornography – other than that the victim took of herself – on his phone or computers.

To grant a variance here would neither undermine "respect for the law" or fail "to provide just punishment for the offense." With the objection sustained and variance granted, Mr. Young would still be sentenced to somewhere around fifteen years, *i.e.*, between 168 and 210 months.

**(B)  To afford adequate deterrence to criminal conduct.**

Whether Mr. Young's sentence in this case will deter other adults from exchanging sexually explicit images with minors they meet online is an open question, but even assuming it will, there is no reason to believe that a sentence of fifteen years in a federal prison followed by a substantial period of supervised release would not provide adequate deterrence. Evidence that sentencing those convicted on these types of crimes involving minors to long prison sentences is producing little deterrence is the fact that the number of prosecutions and convictions for child pornography crimes has not shown corresponding decrease. Few, if any, contend that the cause of the increase in child pornography cases are sentences of imprisonment that are too lenient.

**(C)  To protect the public from further crimes of the defendant.**

When released from prison, this Defendant will be approximately fifty years old if he is sentenced to fifteen years as requested. While in prison, Mr. Young will almost certainly have received both addiction and sex offender treatment. He would be on supervised release for another five to fifteen years after release. The risk to the public of further criminal behavior for Mr. Young would be minimal.

In addition, Dr. Williams is expected to testify at sentencing that the likelihood of Mr. Young reoffending after he is released from prison is negligible.

**(D)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 10

Certainly Mr. Young could benefit from educational and vocational training as well as addiction therapy in prison but a twenty- to thirty-year sentence is not needed for this purpose and a much shorter sentence would be sufficient. Furthermore, sex offender treatment should be completed while in prison.

3. **The kinds of sentences available**

The kind of sentences available for Mr. Young are dictated not by the Sentencing Guidelines but by the statutes:

> Custody Statutory Provisions: Ct. 1: 10 years to life; Ct. 2: 15 to 30 years; and Ct. 3: 5 to 20 years.
>
> > Supervised Release Statutory Provisions: Cts. 1 to 3: 5 years to life.[16]
>
> Special Assessment: $300 ($15,300 mistakenly included as "Statutory Provision" pursuant to Justice for Victims of Trafficking Act of 2015) in PSI.[17]

While the Court is required to assess an amount of $5,000 per count of conviction against all *non-indigent* defendants pursuant to the Justice for Victims of Trafficking Act of 2015 (*18 U.S.C. § 3014*), Mr. Young is indigent.

> (a) In general. **Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 [enacted May 29, 2015] and ending on September 11, 2022, in addition to the assessment imposed under section 3013 [18 USCS § 3013], the court shall assess an amount of $5,000 on any *non-indigent* person or entity convicted of an offense under**—
>
> (1) chapter 77 [18 USCS §§ 1581 et seq.] (relating to peonage, slavery, and trafficking in persons);
>
> > (2) chapter 109A [**18 USCS §§ 2241 et seq.**] (relating to sexual abuse);
>
> (3) chapter 110 [**18 USCS §§ 2251 et seq.**] (relating to sexual exploitation and other abuse of children);
>
> (4) chapter 117 [**18 USCS §§ 2421 et seq.**] (relating to transportation for illegal sexual activity and related crimes);
>
> > . . .[18]

---

[16] Sentencing Recommendations, p. 1.
[17] Sentencing Recommendations, p. 3.
[18] *18 U.S.C. § 3014* (*emphasis added*).

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 11

Mr. Young has no assets, was appointed counsel under CJA and has been incarcerated since his arrest. Moreover, due to his mental illness and lack of vocational training, Mr. Young has never maintained long-term employment. According to the PSI, "it is unlikely [Mr. Young] will be able to pay a fine within the guideline range at the time of his sentence due to the length of time he will be incarcerated and the likelihood he will be required to participate in treatment upon his release."[19]

In addition, the first sentence of the Justice for Victims of Trafficking Act of 2015 (*18 U.S.C. § 3014*) confines its enforcement to between when the statute was enacted [May 29, 2015] and September 11, 2015. Mr. Young is scheduled to be sentenced on September 16, 2022.

**4. The kinds of sentence and the sentencing range established.**

See above.

**5. Any pertinent policy statement.**

None.

**6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Applying the complicated and technical rules found in the Guidelines to categorize all defendants may achieve some degree of uniformity in sentencing but at the expense of any claim to reasonableness. Rather than helping to avoid "unwarranted" sentence disparities – a worthy goal – the Guidelines create "unwarranted" sentence uniformity among defendants who have been found guilty of very dissimilar conduct – an unjust result.

The 360 month recommended sentence for Mr. Young is the unfortunate result of the application of U.S.S.G. §§ 2G1.3(c)(1), 2G2.2(c)(1), and 2G2.1.

---

[19] PSI, ¶ 105.

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 12

The cross references found in §§ 2G1.3(c)(1) and 2G2.2(c)(1) were applied to shift Counts. 1 and 3 to § 2G2.1 Applying the cross-refences, Mr. Young's base offense level was set at 32. But, absent application of the cross reference in § 2G1.3(c)(1), the base offence for Count. 1 would have been 28 rather than 32. Absent the application of § 2G2.2(c)(1), the base offense level for Count. 3 would have been 22 rather than 32.

Mr. Young's sexting a minor he met online and never actually meeting in person cannot easily be brought under cross-references §§ 2G1.3(c)(1) and 2G2.2(c)(1).

> If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct for the purpose of transmitting a live visual depiction of such conduct, apply § 2G2.1 . . .[20]

Because there is no evidence that Mr. Young was ever "transporting, permitting, or offering or seeking by notice or advertisement [the victim] to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," the application of cross-refences §§ 2G1.3(c)(1) and 2G2.2(c)(1) must have been based on the term "causing."

The victim did testify at trial that Mr. Young asked her to send him sexually explicit pictures which she did. Is asking someone to take sexually explicit pictures of themselves the same as causing them to do so? While Mr. Young's request may technically satisfy §§ 2G1.3(c)(1) and 2G2.2(c)(1) as being the "cause" of the victim taking the pictures of herself, including Mr. Young into the same base offense level as those who transport minors across state or national borders just to photograph such minors engaged in sexually explicit conduct is not reasonable.

Moreover, to apply §§ 2G1.3(c)(1) and 2G2.2(c)(1) would require the Court to find that Mr. Young caused "a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct for the purpose of **transmitting a *live* visual depiction of such**

---

[20] *§§ 2G1.3(c)(1) and 2G2.2(c)(1).*

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 13

**conduct**."[21] Counsel for Mr. Young is unaware of any claim or evidence that the victim here ever transmitted any sexually explicit images of herself "live." Unless "live" is interpreted so broadly as to mean the victim was alive at the time the picture or video was made as opposed to when it was transmitted, §§ 2G1.3(c)(1) and 2G2.2(c)(1) would not apply to Mr. Young. And, if §§ 2G1.3(c)(1) and 2G2.2(c)(1) were to be so broadly interpreted, including Mr. Young into the same base offense level as those who film and then broadcast "live" their minor victims engaged in sexually explicit conduct would not be reasonable.

After *Booker*, this Court need not presume the unreasonable applications of such rules are made more reasonable by their inclusion in the PSI. Guideline rules should never be allowed to trump reason and the Court's sense of justice.

> **The district court may not presume that the Guidelines range is reasonable**. *Rita*, 127 S. Ct. at 2465 (*citing Booker*, 543 U.S. at 259-60); *Gall*, 128 S. Ct. at 596-97. **Nor should the Guidelines factor be given more or less weight than any other.** While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence. *Kimbrough*, 128 S. Ct. at 570; Gall, 128 S. Ct. at 594, 596-97, 602.[22]

Rather than argue about how rules such as §§ 2G1.3(c)(1) and 2G2.2(c)(1) should be construed at sentencing, the Court should – consistent with *Booker* – simply follow the mandate in *18 U.S.C. § 3553(a)* and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."[23]

> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;

---

[21] *§§ 2G1.3(c)(1)* and *2G2.2(c)(1) (emphasis added)*.
[22] *United States v. Carty,* 520 F.3d 984, 991-992 (9th Cir. 2008) (*emphasis added*).
[23] *18 USCS § 3553(a)*.

DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE – Page 14

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[24]

There is no reason to believe that a sentence for Mr. Young of 180 months (fifteen years) would not be more than sufficient to meet the needs expressed above in *18 U.S.C. § 3553(a)(2)*.

**7. The need to provide restitution to any victims of the offense.**

Mr. Young is indigent and no restitution has been requested nor recommended by the PSI.

**B. Allowing the Defendant Credit for *All* Time Served from the Date of His Initial Incarceration Related to this Offense Would be *Reasonable*.**

When sentenced by the Court on September 16, 2022, Mr. Young should receive credit for all the time he has served since being arrested. When sentenced, Mr. Young will have already being incarcerated for just short of twenty months. To deny him credit for all the time served seems patently unreasonable.

Because counsel for Mr. Young cannot imagine what arguments could be made for not allowing Mr. Young credit for all the time served, counsel requests an opportunity to respond when, or if, this request is opposed by the Government.

## CONCLUSION

For all the reasons stated above, Mr. Young respectfully asks this Court to (1) grant his motion for a departure/variance (2) sentence him to 180 months with five years of supervised release and (3) order that he be given credit for all time served since his incarceration.

DATED this 9th day of September, 2022.

/s/ Richard A. Hearn
RICHARD A. HEARN
Counsel for Defendant

---

[24] *18 USCS § 3553(2)*.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of September, 2022, I served the foregoing electronically via email at the address(es) listed below:

John Christopher Shirts
john.shirts@usdoj.gov

/s/ Richard A. Hearn
RICHARD A. HEARN
Counsel for Defendant